CLARISSA E. THAYER *vs.* PROVIDENCE WASHINGTON INSURANCE COMPANY.

Penobscot.    Opinion February 9, 1880.

*Insurance. Representation. Risk. Evidence.*

Where there has been an erroneous statement of the value of the buildings insured to the agent of the insurance company by the agent of the party insured in procuring the policy, under our existing statutes the question is, not whether the insurers regarded that matter as material to the risk, or

were induced thereby to take the risk, but whether the jury are satisfied that the difference between the property as represented and as it really existed contributed to the loss or materially increased the risk.

Nor will the vacating of a building or any change in its use or occupation affect the policy, unless the risk is thereby materially increased; and that is for the jury to determine.

In such a case the evidence of men experienced in insurance business is not competent to show that insurance companies generally would not insure unoccupied buildings on account of the increased risk, or that a risk is regarded as greater or less according as the amount of the insurance is to the whole value of the property insured.

If the jury find, in a case where there has been an erroneous statement as to the value of the property insured, that the difference between the property as represented and as it really existed contributed to the loss or materially increased the risk, it will avoid the policy although they may not find that the representation was originally made with fraudulent intent.

The insurance company cannot offer in evidence the report of their own agent made to themselves to show that they were induced thereby to take the risk, or that there was an over valuation, or for any other purpose.

It is for the jury, upon all the evidence before them, to say whether the vacating of the building materially increased the risk; and if it did, it is not for the court to say, as matter of law, that the policy would not be avoided by its becoming vacant during the life of the policy when there is a stipulation in the policy that it shall be null and void if the insured allowed it to become vacant and unoccupied.

On exceptions and motion to set aside the verdict as against evidence.

Action to recover upon a policy of fire insurance, on the plaintiff's buildings, issued by the defendant company, October 6, 1877. Plea general issue.

The plaintiff introduced the policy declared upon, and it was admitted by the defendant that proper and seasonable proof of loss was made by the plaintiff, and that she owned the property.

Among the prohibitions and conditions stated in the policy, whereby it should become void, was the following : "If an application, survey, plan or description of the property herein insured is referred to in this policy, the same shall be considered a part of this contract and a warranty by the assured ; and if the assured shall make any false representation as to the character, situation or occupancy of the property, or the interest of the assured in the same ; or conceal any fact material to the risk, either in a written application or otherwise ; or shall have, or hereafter make

any other insurance on the property herein insured, or any part thereof, without notice to and consent of this company in writing hereon ; or if during the existence of this policy or any renewal thereof, the risk shall be increased by any means whatever with the knowledge of the assured, without the assent of this company endorsed hereon; or shall cause the property herein described to be insured for more than its value ; or shall allow the building herein insured to become vacant and unoccupied ; . . . then in every such case this policy shall be null and void."

Clarissa E. Thayer, (plaintiff,) testified :   That she owned the insured property; that it was mortgaged for about $500 ; $200 to Mr. Dorr, and $300 to Capt. Hawley; that she built the house in 1853, and partly finished it afterwards.

Subject to objection, plaintiff testified that she regarded the property worth at the date of the policy $3000 ; had not offered it for sale ; also that she thought she had received $185 for one year's rent during the past five years.

On cross-examination, she testified that the policy was sent to her at Winterport.   The application therefor was made for her at the office of the company in Bangor by a friend of hers, who then resided in Frankfort ; that she didn't remember of making a written application ; requested her friend who made the application to get $3000 insurance on the property ; desired a policy for the full amount of its value ; did not know what her friend represented the property as worth to the agent in Bangor.   It may have been a week from the time he went to Bangor before she received the policy ; that he didn't state to her what he represented it to be worth to the agent.   Mr. Taylor, the agent of the company, had never seen or examined the property to her knowledge.

At the time the fire occurred, on the night of the 2d of January, 1878, the premises were unoccupied.

The last tenants in the building were Capt. Babbage, who occupied a portion of the building as a dwelling-house, and her son who occupied a portion, for the manufacture of vests.   The former vacated the building November 23, 1877, and the latter, December 14, 1877.

That she was in the house on the 2d day of January, 1878, ten or fifteen minutes; had a woman there cleaning the house for a tenant whom she expected to go in the next day; that there was one stove set up in the rear room in the third story of the building. It was the only stove in the building. It was a coal stove. There was a coal fire in it when she was in the house on the 2d of January.

That while she was there she directed the woman to leave a good fire to dry off the room as the tenant's wife was in ill-health; that she was not in the house when the woman left in the afternoon. She left about dark, and came and told her; that she resided in the building two houses off from the building burned. The fire was about eleven o'clock at night; that she gave no notice of the unoccupancy of the building to the company, or its agent, not expecting it to remain so any time.

Testimony, on part of both plaintiff and defendant, was introduced as to value of the insured property, and cost to rebuild.

Charles H. Taylor, called by the defendants, testified: Reside in Bangor; and am and was in October, 1877, the agent of defendant company. Have been in the insurance business six years.

On or before the 6th day of October, 1877, E. P. Treat, of Frankfort, came to my office in Bangor, and said he had two risks for Mrs. Thayer, plaintiff, one of which was the property covered by this policy.

I asked Mr. Treat as to the value of the property, its size, exposure, ownership, etc. Treat said the value of the buildings insured in this policy was about $5000. He wished $3000 on it. I gave him $2500. This policy of $1250, and another in the Manhattan Company, for the same amount; there were not written applications.

Witness here testified, subject to objection, that on the day he wrote the policy, he made, what is called in the business, his daily report of the risk, and forwarded the same to the home office of the company, in Providence, in the regular and usual course of business. Said report was then produced, shown the witness, and by him identified, which, subject to objection, was admitted as evidence.

The witness further testified, subject to objection, that two-thirds of the whole value of insurable property was the extreme amount for which he was allowed to write a policy; that in writing this policy he relied upon the representation made to him by Treat, that the buildings were worth about $5000, and that he was induced by said representation to do so.

Francis M. Sabine, called by the defendant, testified: That he resided in Bangor, and for upwards of forty years; that he was the manager of the Bangor Mutual Insurance Company, and had been for many years, and had been during that time acquainted generally with the manner in which insurance companies do their business.

Witness then testified, subject to objection, that insurance companies generally would not insure unoccupied buildings on account of the increased risk; that a risk was regarded as greater or less according as the amount of insurance is to whole value of the property insured.

At the trial the defendant requested the presiding judge to instruct the jury:

That if the plaintiff, or her agent, Treat, in procuring the policy, so misrepresented and over valued the property insured, as to materially increase the risk, such misrepresentation, if relied upon by the defendant, in writing the policy, would invalidate the policy.

The instruction was refused, and the presiding judge instructed the jury, that any misrepresentation of value made by the plaintiff, or her agent, in order to invalidate the policy, must have been such as to materially increase the risk, and have been fraudulently made.

The presiding judge, as to the buildings being vacated without notice to the defendants after the policy was written, and remaining so till the loss occurred, instructed the jury as follows:

That, if the tenants in the buildings had left, and other tenants were being sought for, (the buildings meanwhile remaining vacant,) the policy would remain in force and cover the property during such vacancy of the buildings, without notice to the defendants of the vacancy.

The verdict was for the plaintiff for $1103. Other facts in the opinion.

*Wilson & Woodard*, for the plaintiff, cited Stats. 1861, c. 34. 1862, c. 115. R. S. c. 49, §§ 18, 19, 20. *Emery* v. *Piscataquis F. & M. I. Co.*, 52 Maine, 322. *Cannel* v. *Phenix I. Co.*, 59 Maine, 582. *Bellatty* v. *Thomaston M. F. I. Co.*, 61 Maine, 414.

*J. Varney*, for the defendant.

BARROWS, J. A failure in the haste of a *nisi prius* trial to recognize the exact character of the change in the law of insurance (as heretofore laid down in numerous cases,) which has been wrought by our statutes, will make a new trial necessary here, though it is probable that upon the same testimony the verdict would have been the same had the jury been left to pass upon the precise questions which the statutes make the vital ones for their determination.

One of the defenses relied on was an over-statement of the value of the insured premises to defendants' agent by plaintiff's agent in procuring the policy; but this, the statute declares, "shall not prevent his recovering on his policy unless the jury find that the difference between the property as described and as it really existed contributed to the loss or materially increased the risk." These are the only inquiries which are pertinent where the defense is an alleged erroneous statement of value. And while it is not easy to imagine any set of circumstances where the difference between the over-statement and the correct valuation could contribute to the loss or materially increase the risk unless the over-statement was fraudulently made, still, the question is made by the statute a question for the jury, and not for the court. Materially increasing the risk means here increasing the hazard of loss, and has nothing to do with inducing the insurance company to enter into the contract.

The defendants' counsel in his request for instructions on this point, and the presiding judge in the instruction given, both seem to have had in their minds the effect under the statute of a misrepresentation of the title or interest of the insured which the

statute says shall not prevent his recovering on his policy to the extent of his insurable interest unless material or fraudulent. These are inquiries which would have been pertinent here if defendant had made any question as to the effect of two small mortgages upon the property, but it was expressly admitted that "plaintiff owned the property insured." Misrepresentations as to title, although classed with those as to value in one clause, are made the subject of another provision the effect of which will have to be determined when there is a question as to such misrepresentations. But no such question is made here.

Defendants' counsel combined and confounded in his request for instructions a material increase of the risk (an increased hazard of loss) with an inducement which might be supposed to have operated on the defendants in writing the policy. But under our statute the law does not trouble itself to inquire as to the effect of an overvaluation in inducing the defendants to write the policy. The inquiry is only whether it contributed to the loss or materially increased the risk. The defendants cannot complain of the refusal. They introduced into their request an element which has no pertinency to the inquiry and would tend to lead the jury to suppose that although the difference between the property as represented and as it actually existed did not contribute to the loss nor materially increase the hazard of loss, yet if it was material in the judgment of the insurer and induced him to take the risk, that was tantamount to a material increase of the risk and would avoid the policy. This was not so, and no such idea should be conveyed to the jury, directly or indirectly.

But while the presiding judge was right in refusing to instruct as requested, he seems to have gone so far as to prohibit the jury from finding that the overvaluation contributed to the loss or materially increased the risk, unless they also found that the misrepresentation was fraudulently made.

If this was the only objection to the instructions it might perhaps be worth while to consider whether upon the testimony here presented the defendants were injured by the ruling; whether upon a different one, presenting the issue defined by the statute, they could have expected a different result, especially as the errors

seem to have originated with allowing the defendants to put in testimony which ought not to have been received against the plaintiff's objection, as we shall have occasion hereafter to observe.

But the other defense was that at the time of the fire the buildings were unoccupied and that this fact, which was conceded, avoided the policy which contained a stipulation to that effect.

Now, as to this, the statute says that a change in the property insured, its use or occupation, or a breach of any of the terms of the policy by the insured shall not affect the policy unless they materially increase the risk. A change from occupancy to disuse of a building insured is a change in the use and occupation within the meaning of this provision. *Cannell* v. *Phœnix Ins. Co.*, 59 Maine, 582. The defendant had a right to have the jury determine whether the fact that the premises had ceased to be occupied had materially increased the risk, but the instructions given took this question away from the jury and affirmed the right of the plaintiff to recover notwithstanding the stipulation in the policy if the building had been vacated by tenants and other tenants were being sought for. The instruction is colorably supported by *Gamwell* v. *Merch. & Farm. M. F. Ins. Co.*, 12 Cush. 167. But it does not appear that the policy there contained the same direct and specific stipulation as to the effect of vacating the premises; and, if it did, the decision would still be obsolete under a statute provision like ours, and herein it resembles the greater part of those cited in the elaborate argument of defendants' counsel—good authorities doubtless for the doctrines for which he contends, in the absence of such statutory provisions, but not available to counteract those provisions.

The inquiry is not now whether the insurers regard the difference in the property as represented and as it really exists as material to the risk, or whether they were induced by the erroneous representation to enter into the contract. The statute presupposes that their local agents will do their fair duty in ascertaining the value and situation of the property, and refuses to allow them to set up an erroneous statement of this sort as a valid defense unless the jury find it contributed to the loss or materially increased the risk.

This is sufficient to dispose of the motion to set aside the verdict as against evidence. There is no testimony which was legally admissible which would imperatively require the jury to find that the difference between the property as represented and as existing contributed to the loss or materially increased the risk.

The defendants were permitted to put in the daily report of their own agent which had no legitimate bearing on these or any other question arising in the case and should have been rejected. If this report could be regarded as the application for insurance, the statute would make it conclusive against the defendants upon the question of value, for it was written by their agent whose name was borne on the policy. R. S., c. 49, § 18.

As it cannot be technically so regarded there is no purpose for which the defendants could offer it that it can legitimately subserve.

The testimony of Sabine as an expert in insurance business was also incompetent. This has been settled by repeated decisions in this state and elsewhere. In *Malloy* v. *Mohawk Valley Ins. Co.*, 5 Gray, 545, Bigelow, J., says that "the ruling of the court rejecting the evidence of certain officers and agents of insurance companies in Boston, offered as experts to prove that the failure of the applicant and his men or any one else to occupy the said building for lodging increased the risk and was material thereto, was clearly right." The case is direct to the point as stated in the syllabus that the evidence of experts is not competent to show that the risk of fire is greater in unoccupied buildings.

See also *Jefferson Ins. Co.* v. *Cotheal*, 7 Wend. 73. *Joyce* v. *Maine Ins. Co.*, 45 Maine, 168. *Cannell* v. *Phœnix Ins. Co.*, 59 Maine, 582. *State* v. *Watson*, 65 Maine, 74, 76, 77.

We have, then, the simple facts that the plaintiff, a woman, estimating the value of her buildings at $3000 asked a friend to get insurance on them to that amount ; that the man who did the errand, and who may have answered the insurance agent's question upon a rough estimation of the value from the outside appearance, stated their value at $5000 and got $2500 insurance ; that their actual value was not more than $2200 or $2300.

Under the circumstances, when the over-insurance was so small

and the amount of insurance obtained was less than the value as estimated by the owner, we cannot say that it is conclusively demonstrated that the overvaluation contributed to the loss or materially increased the risk. It was for the jury to say, and but for the misdirection which may have prevented their passing upon it with the clear understanding that it was a vital question for them to decide, no new trial would be necessary.

Upon the exceptions as made up and allowed, the entry must be,

*Exceptions sustained.*

APPLETON, C. J., DANFORTH, VIRGIN, PETERS and SYMONDS, JJ., concurred.